1996 John W. Steinmetz et al. v. Coyle & Caron, Inc. May I please reserve three minutes for rebuttal? Yes. Thank you. I'm representing the appellants, myself and my wife, and while I'm technically pro se, I just want to note briefly that I'm an attorney. I've practiced law for over 20 years, including at Tess Cherwitz and a partner at Robinson & Coyle. If you were pro se this morning and not an attorney, you would not have the benefit of oral argument. Can we skip over that and get to the issues in this case, please? Yes, Judge O'Connor. The parties agree that the standard of review is de novo on all issues. I respectfully submit that the anti-slap statute does not apply in this case. In February 2017, the Supreme Judicial Court of Massachusetts, which I may In that case, the court took a very hard look at who is covered under the anti-slap statute and who is not, and to clear up any confusion that may have existed in the lower courts on that issue. The court looked back at its 2005 decision in Coburn v. Gasperein, as well as the limiting language of the anti-slap statute, and held that the party moving on an anti-slap motion to dismiss must meet a threshold burden of proving that they are exercising their own constitutional right to petition. Therefore... Counsel, I'll defer to Judge Silk. The precise question raised in the case before us was not before the SJC in Cardinal, and therefore it is not direct precedent on our issue. I will concede that there's a good deal of dicta in Cardinal that works in your favor. I am troubled, though, by the fact that Cardinal did not purport to overrule prior mass appeals court cases that seemed to be more on point and to argue against you. You chose to be in federal court. Had you been in state court, the state could extend its rules on this area. But we are not aware of any changes that we're being asked to make in state law. So with that as a background, it looks like under the appeals court decisions, you lose on this issue. But under the SJC decision, my, you've got perhaps a very good chance of persuading the SJC to your ultimate position, but they haven't ruled it yet. So just that's the way I'm looking at this. Okay, I think the issue that I raised was whether a disinterested paid expert witness Hired for the very purpose of assisting a party who is petitioning the government. And indeed, in this instance, hired by counsel who was assisting the party in the petitioning of the government. The SJC simply hasn't dealt with that situation. See, you can predict based on the dictum, or you can ask us to predict that the SJC will see it your way, see that question. But we, on the other hand, have the appeals court in Massachusetts, having made absolute definite decisions on that point, which have not been overruled by the SJC, even though Cardinal presented an opportunity for them to do that, which hold against you. Okay, I believe my, and I move on to my next issue, I believe that the court in the Cardinal Supreme Court, in the case of the Oren versus Gastreen case, that supports my position that the anti-slap statute does not apply here. Because the defendant did not demonstrate that they were exercising their own constitutional right to petition. You know, it could be someday the SJC will agree with you, but in the meantime, here we are, a federal court, being asked to predict what they're going to do in the face of controlling precedent from the appeals court that goes against you. Perhaps you should move on to your next issue. Okay, thank you, Your Honor. The next argument I'd like to address is, I respectfully submit that the current standards under the anti-slap statute violate the right to a jury trial and to access the courts. And why is that so? Especially on this case, where I don't see any effort by the federal court to resolve disputed issues of material fact? Oh, the court certainly did, Your Honor. I'm happy to explain how the court did it. Okay, I may have misunderstood. I thought the court was just evaluating this threshold level about the defenses that were being asserted, and not resolving issues of fact. Well, you know, I point to Judge Young's decision in the high-tech pharmaceutical case versus the other one. Oh, please. Okay, that's Judge Young. Let's, we're the First Circuit Court of Appeals. Okay, we sometimes look to the district courts for guidance. We tend to look more to our equivalent courts around the country. And I didn't see any law from any of the other circuits that tends to support your position. There are courts, I cite to the anti-slap statute in Maine. It's essentially identical to the anti-slap statute in Massachusetts. In 2012, the Maine Supreme District Court changed their standard. What fact, we're familiar with the Maine case, what fact do you say was adjudicated here that should have gone to a jury? Okay, I've got, I will go to that, Your Honor. Just give me one example. Okay, the first is, simply looking at the renderings, Your Honor. There are two parts we would need to meet. One is showing that the renderings lacked a reasonable basis in fact. The second is that we suffered some actual injury. But not the reasonable basis in fact. I mean, even if there weren't a slap statute, an institutional right petition, New York Times versus Sullivan, nor Pennington, they exist without the anti-slap statute. A court would have to adjudicate those defenses and ask the legal question as to whether the evidence, there's at least a reasonable basis for the submission made to the governmental body. And if there is, you lose. Even without the anti-slap statute. Yeah, but it's separate here. I think we need to focus on the anti-slap statute here because that was the only issue. Well, but that makes the point that for a court to adjudicate whether there's a minimal basis, not whether the party's right, but whether there's, as a matter of law, at least a minimum basis for it, that's not a jury question. That's a legal question that is routinely adjudicated on behalf of First Amendment defenses. So what's wrong with it being adjudicated under the anti-slap statute? Because clearly here, and I can go through the facts, we are, again, simply looking at the renderings, the one prepared by Coyle and Cairn, the one prepared by our architect shows that the Coyle rendering is completely wrong. Our architect, John Teriyaki, who got his master's degree from... You're not answering the question you were asked. Okay. I apologize. I'm sorry. That your expert disagrees doesn't do it if there was, nonetheless, a reasonable basis for the renderings with the express limitations put on those renderings. There were no limitations put on the renderings. Oh, yes, there were. They ask for certain CAD CAM, the defendants ask for certain CAD CAM files to assist them in this process. They were not given. It's sort of implicit that might have made a difference to them if it had been given. They say you ought to be aware that these are the limitations on the information we were given. They said it was at least 95% accurate based on the information provided, which did not include the CAD information.  Now, your expert, in fact, doesn't say it's completely wrong. He does. Well, it's a house, isn't it? It's a house, but... Okay, well, there we go. There's one thing that's right. But... It's got windows. No, seriously, it's not completely wrong. No, but let's go back to, it's some right and some wrong. And if you were adjudicating the facts as to whether it's right or wrong, bottom line, then you go to a jury, all right? But the issue here is not that ultimate issue. Is there at least enough basis so that it you might have to prove that it's actually knowingly false or reckless disregard of the truth. Those are legal issues. I submit that it's not accurate, other than the fact it may have some windows, but the Empire State Building has windows. That would not make the rendering accurate in any way. It's completely wrong. The factors that are considered in looking at a rendering are size, height, visibility, masking, and scale of the house. Our architect said that the quarter renderings have no basis in fact as to location, size, height, visibility, masking, or scale of the house, making it completely inaccurate. Okay, I may be missing the point, but the point is the rendering that they came up with was dependent on the information that they were given. Your expert doesn't seem to say given the limitations of the information they were given, there was no reasonable basis. I don't know what the basis is for your expert to say there was no reasonable basis in fact. He explains it in his... Okay, what does he say? Does he say if I were working only from the material they had, I could not, no reasonable architect could possibly have come up with these renderings? He doesn't quite say that, does he? They had what they needed. They had all the plans that were filed publicly. They had the site plan showing the location. They put the house in the completely wrong location. You've reserved three minutes, I believe. Thank you. Good morning. May it please the court, my name is Evan Fray-Witzer and I represent the appellee, Coyle and Karen, Inc. May I ask that you pick up where Mr. Steinmetz left off as to what the state of the record is as to whether these drawings submitted by your client had a reasonable basis? Absolutely, Your Honor. And I am privileged in this case to have an incredibly well-reasoned decision from Judge Casper down below. And I say that because if you look at the record that Judge Casper lays out, she goes through first... Counsel, we will certainly, we have read the opinion several times. We will read it again. But would you answer the question you were asked? Yes, Your Honor. The state of the record is that Coyle and Karen reviewed notices of intent, grading sheets, review letters, site plans, architectural drawings, and Ms. Coyle is an experienced architectural landscape engineer. So what the state of the record was is demonstrable that there was a reasonable basis in fact. And that's what Judge Casper concluded. But the plaintiff's argument, as I understand it, is that regardless of how much material the defendant reviewed, the defendant got it all wrong and came up with a drawing that didn't respond to what the structure actually was. Now, if that's so, you can conceive situations where that may get a plaintiff over the hurdle. And what I'm asking you is to give me your view of how the record relates, the affidavit the plaintiff filed from their expert, in opposition to this question of reasonable basis. Why is that expert opinion not sufficient to create a jury issue on reasonable basis? There are two reasons, Your Honor. The first is the one that was identified by Judge Lynch, which is the plaintiff's expert never said, first of all, never said that the rendering was completely inaccurate. What he said was there are aspects of it that he believed to be inaccurate, placement, things like that. He doesn't say that the rendering is completely out of the realm of what that rendering should look like. And indeed, if you look at their architect's rendering, although there's a difference in tree line, I would suggest that it's not drastically different. It's not the Empire State Building that we're talking about. Judge Casper looked at the plaintiff's expert and said even if the plaintiff's expert is correct in that there are some errors in the rendering, that doesn't bring you to the place you need to be under the anti-SLAPP statute. Under the anti-SLAPP statute, it is the plaintiff's burden to show that there is no reasonable basis in fact or law. And I would maintain that once Coyle and Karen had demonstrated that there was a reasonable basis, that their basis was the plans that were available to them, the information that was available to them, and the expertise that was applied to that, there is no possibility that the plaintiff can overcome that at that point, no matter what standard you use. Because the district court, having found that there was some reasonable basis, that some reasonable juror could look at this information and come to the same conclusions or draw the same rendering as did Coyle and Karen, once you've hit that spot, you cannot then prove that there is no reasonable basis. You can't prove the absence of what's been proven. No, but you can certainly subject to appellate review the district court's conclusion that there is no reasonable basis. That's a conclusion of law which is reviewed de novo, and I gather that that's what the appellants are asking us to do here, are asking us to review that question, and I'm searching for what the state of the evidence is on reasonable basis. Now, you've given me one answer to why their affidavit doesn't contradict the proffer of your client on reasonable basis, that it talks past it, as I understand what you've said. Is that basically what this boils down to? That is in large part, Your Honor, what it boils down to. If they had just come up with a different expert affidavit that actually directly contradicted, then the district court should have let the case go on? Well, and that was going to be the second part of my answer, Your Honor, which is I'm not certain that that is correct, and in fact I would suggest that it's not, because what you have at this point is not a situation in which an expert is saying there is no possible way that someone could have come up with this rendering given the information that they had at the time, and I would be hard-pressed to think that there would be a situation where that's what the expert would say. I suppose it could be. Okay, you're saying it doesn't turn on the expert affidavit. What does it turn on? What's your new point? What it turns on in this case is the fact that evidence has been presented that a reasonable jury could conclude that Coyle and Karen had a basis in fact. Once you've hit that point, once Coyle and Karen has hit that point, and truthfully it's the plaintiff's burden to disprove that point, but having proven that there was some reasonable basis, it's then impossible for the plaintiff to present some evidence that the basis that's been shown. But that reads the phrase preponderant evidence out of the anti-slop statute, because that contemplates that there may be a preponderance of evidence beyond what the defendant says that its representation represents. There may be some way. So you're saying in a situation like this, you've got to take the defendant's word for it so long as the defendant discloses the material that she reviewed and attests that she made a good faith effort to depict it in her drawing. Well, Your Honor, what I would say is, first, the statute itself doesn't use the preponderance language that came from the Baker case at the SJC. Yeah, but the SJC has used it, so that's the test that's got to be applied. And absolutely. But preponderant evidence is different than saying that the case will be dismissed if the plaintiff proffers evidence that, if the defendant proffers evidence that. But what the preponderance of the evidence standard gets applied to, Your Honor, is the burden shifting in the anti-slop statute. The first step, Coyle and Karen having shown that they were sued solely for their petitioning activity, it shifts to the defendant. The defendant then needs to prove by a preponderance of the evidence that there was no reasonable basis in fact or law. And so the preponderance standard is actually applying to, you need to be able to show us that it's more likely than not that the speaker, Coyle and Karen, had no basis. Yeah, I understand that. What I'm quarreling with is your conclusion that once the speaker says, see, I had a reasonable basis, this is what I was given and this is what I produced, right, that there is no way in which the plaintiff can contradict that. And I'm saying that if that's the law, then preponderant evidence means nothing. There has to be a way in which the plaintiff can contradict that. They may not have done it in this case, but there has to be a way in which they can do that. And I'm happy then to retreat to the secondary position, Your Honor, that in this case it didn't happen. The affidavits that were presented by the plaintiff do not reach the burden that you are suggesting. What do you say about the tree line? Because as I understand it, they're saying that the actual trees in front of the house were taller than the house, at least some of them, and in the rendering the house is considerably taller than the surrounding trees. And, again, I'll give two answers, Your Honor. The first answer is I think there's a difference between a rendering that's showing a summertime rendering. No, but stay with either one of them. The trees on your client's renderings, both summer and winter, are below the roof line. And, again, I'm sorry, there are probably a couple of answers, one being after the construction the trees aren't going to be mature trees, they're going to be new trees. And so I would argue that the rendering is actually more accurate for the beginning of once the construction is complete. I would also say that, as Judge Lynch pointed out, they were denied certain drawings that may have made the accuracy somewhat more accurate had they been given those drawings that they revealed to the Conservation Commission what the limitations were on what they had been presented. But the final answer that I would give, of course, is they don't have to be 100 percent accurate to be protected by the statute. They can ultimately have some measure of inaccuracy so long as they had a reasonable basis in factor law for the drawing that they produced, and they did. What I would move to, Your Honors, is the Cardno-Chemrisk case that my brother relies on. First of all, I agree with the Court. It does not address the question directly. The only language in Cardno-Chemrisk that really is at all to my brother's argument is a repeat of some of the language that came from the Cobran case. And each appellate court, both the SJC and the Appeals Court, posed Cobran to look at Cobran language, said, this is a special case. You have in Cobran a government-hired expert petitioning the government. It would have been easy for the SJC to distinguish Cobran on that ground. They chose not to do so. We've got a sub-issue here about why the SJC may have chosen to put all of that dicta in, and that has to do with the text from the legislature of this anti-SLAPP statute. This is a matter of legislative choice for Massachusetts as to how far it intends to extend the protections. Literally reading the statute, one would doubt whether anyone other than the directly petitioning party is entitled to the protection. One might say that's irrational. One might say there are some state and federal constitutional constraints on interpreting the statute that way. But the SJC has the problem of the text of the statute to deal with. So why don't you talk to me about the text of the statute? In looking at the text of the statute, Your Honor, and in particular the petitioning language that you are talking about, the appeals court in Plant v. Wiley first came out and said the statute would be of little use if it did not protect the federal policy. If you could stick to Judge Lynch's question on the statute specifically, let me direct you to the language. How do you parse the statute to say that what we had here was your client's exercise of its right of petition? So I think you need the language of the statute to say your client was petitioning a governmental body. Well, and I think what the cases have shown from the SJC and the appeals court is that they have interpreted that language to include those that are standing in the shoes of the petitioner. A petitioner cannot always petition on their own. The SJC made that clear. And it's petitioning on behalf of someone else. Well, it is actually the petitioning activity that, as the SJC said, is not always a singular activity. It is an activity that, by its very nature, a petitioner needs to have. Isn't the party here the defendant in this action? Your client? Yes, Your Honor. Okay. Did it exercise its right of petition here? Well, when cases...  I think arguably it's both. Explain how it includes then its exercise of its right. Well, whenever the cases have looked at it and they've used that language where they've said it's either. It's either the person is doing it on their own petitioning or it's on behalf of their employer or so on. Has the SJC said that? The appeals court certainly has in Keegan. But go back to the language of the statute. Do you want us to read the word it's to mean your client? Absolutely, Your Honor. And I want this. And I think you read it to include Coyle and Karen on the basis that professionals have the right, really anyone has the right, to assist the petitioner. And by assisting the petitioner, they are themselves being part of the petitioning process. They were exercising their right to present to a conservation commission information that was going to be useful or necessary to the conservation commission's decision about the building project. And the cases are clear that their motivation does not matter. It doesn't matter if they are petitioning because they're getting paid to do so. It doesn't matter if they are petitioning because they personally decided that they wanted to oppose the project. The petitioning activity is presenting to a court, to a governmental agency, to a board. That itself is petitioning activity. That itself is Coyle and Karen's own right to petition. So you think it helps your case that Coyle and Karen actually appeared before the commission and provided this imagery? I think it does help their case, Your Honor. But I also think that they produced the drawing in order to affect the result. It's clear from even the complaint, which says they produced this drawing to affect a particular result. They produced it knowing that it was going to be provided to the conservation commission. They provided it to the conservation commission. And then they stood up at a meeting and presented it to the conservation commission. And that's the sole basis for why they have been sued in this action. It is solely because of petitioning activity, whether you look at it as their own petitioning activity, which I think you certainly can, whether you look at it as petitioning activity on behalf of a petitioner, which the cases in Massachusetts all allow, either way you reach the same result. But certainly I do agree that you can look at this as them exercising their own petitioning activity. Would we have to resolve that question, this either or question, to resolve this case? Certainly if you follow the SJC or the appeals court's precedence, you don't. I'm not telling this court that they are necessarily bound by that, although Your Honor started by pointing out that you look in state law to the state's highest court. The state's highest court has repeatedly said that the petitioning activity and the words of the statute encompass both. I'm not sure you need to resolve it. But if you were to resolve it, we need either test. Thank you. We would ask that you refer. Thank you, Your Honor. I'd like to address the point on the application of the anti-SLAPP statute and go back to the Coburn decision. In that decision, the court, not indicted, but specifically says, defendant is not covered by the anti-SLAPP statute because he's not exercising his right to petition. Address this situation for me, Mr. Steinmetz. I want a house not to be built. It's before the planning board. And I call up my neighbor and say, what do you think about the house? And they say, I don't care. And I say, but as a personal favor to me, would you go to the planning board and petition them and say, please don't let that house go up? And they do that just as a favor to me. Are they protected by the anti-SLAPP statute? They have a personal interest as in a butter? No, they don't care. They're another citizen in town. They can't even see the house. I think if they have a personal interest in this. Their only interest is they want to make me happy, their friend. Then I think you'd have to look at. But they go exercise. I would say no. They may go vote. No. Because I asked them to vote. They exercise their right to vote. Yes. But here I think what's critical. Okay. Wait a minute. I suppose the neighbor, adoring Judge Kayada and wanting to make him happy, actually goes to the planning board and speaks at a public session in opposition to it. I wouldn't think it mattered why the neighbor went. But the neighbor was exercising petitioning rights. Do you agree with that? The neighbor was. But the courts have made clear. And I just want to read one quote from. You do agree with me? If a neighbor went and they live in the town and they petition the government, yes. But the court. Take someone out of town, okay, who just reads about it in the newspaper and thinks, you know, I just don't like people building on islands. And I don't live in that town. I don't see it. But I call up the planning board and ask if I can come and speak. And they say, sure, we allow all people to come and petition us. And that person comes and speaks. Are they exercising their right to petition? Yes. They have an interest. Okay. Okay. Here, though, it's different. In Coburn, the court said we would alter considerably the legislature's intent where we interpret the Massachusetts anti-slap statute so as to extend its scope to protect the statements of a disinterested paid witness. That's the Coburn decision from 2005. And that's directly on point here, Your Honor. It's not directly on point because they're talking about a paid witness not for a petitioning party but a paid witness for the government. But in the Cardinal Kemmerer's case, the SJC makes clear that its decision in Coburn was based upon the fact that it was a paid vendor of services. It's fair enough. Thank you. Thank you, both. It's been a very interesting argument. We'll take the case under consideration. Thank you very much.